UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DAVID M. TROTMAN, JR.,

                Plaintiff,                    **REPORT & RECOMMENDATION**
                                                                         18 CV 2711 (GRB)(LB)

    -against-

MICHAEL SPOSATO and VERA FLUDD,

                Defendants.
------------------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

        Plaintiff brings this *pro se* civil rights action against defendants under 42 U.S.C. § 1983 alleging defendants violated his constitutional rights by using excessive force against him, failing to protect him, tampering with his food, failing to produce him for court appearances, and placing him under mental health observation. Defendants move for summary judgment on all of plaintiff's claims pursuant to Fed. R. Civ. P. 56 on the grounds that plaintiff failed to exhaust his administrative remedies for his excessive force claims, as required by the Prison Litigation Reform Act ("PLRA"), that plaintiff has not submitted any evidence to establish either individual or municipal liability under § 1983 on his other constitutional claims, and that plaintiff has not established defendants violated his constitutional rights. ECF No. 82.

        Plaintiff opposes defendants' motion for summary judgment and moves to amend his complaint. ECF Nos. 83, 79. Defendants oppose plaintiff's motion to amend. The Honorable Gary R. Brown referred defendants' and plaintiff's motions to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b).[1] For the reasons set forth below, it is respectfully recommended that

---

[1] This case was reassigned several times. See May 8, 2019 Order (reassigning the case from the Honorable Joseph F. Bianco to the Honorable Joan M. Azrack); June 16, 2019 Order (reassigning the case to the Honorable Kiyo A. Matsumoto and me); Feb. 10, 2020 Order (reassigning the case to the Honorable Gary R. Brown).

defendants' motion for summary judgment should be granted and plaintiff's motion to amend should be denied.

# FACTS[2]

The following facts are taken from plaintiff's complaint, ECF No. 1-1 (Compl.), as amended by his supplement to the complaint, ECF No. 18 (Compl. Suppl.),[3] defendants' Local Civil Rule 56.1 Statement of Facts, ECF No. 82-4 ("Defs' 56.1 Stmt."),[4] and the exhibits filed by defendants with their summary judgment briefing, ECF Nos. 82-9–20.[5] Defendants provided *pro se* plaintiff with requisite notice under Local Rule 56.2. See ECF Nos. 82-1–3.

The events giving rise to this action took place during plaintiff's incarceration at the Nassau County Correctional Center from March 29, 2016 to August 1, 2016. Defs' 56.1 Stmt. ¶ 1; Inmate History Information, ECF No. 82-9.

---

[2] Unless otherwise stated, the facts are undisputed.

[3] Plaintiff's supplement to his complaint states that he "does not wish or desire to withdraw or amend this complaint" but he requests to adjust the compensatory damages sought in his original complaint from $3 million to $86 million. Compl. Suppl. The Court accepted plaintiff's letter as a supplement to the Complaint. See ECF No. 19.

[4] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). The Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. The Court has thoroughly reviewed the record and deems admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

[5] Plaintiff did not file exhibits with his opposition.

A. **Excessive Force Claims**

On March 29, 2016, during the intake process, corrections officers conducted a routine strip search of plaintiff. Defs' 56.1 Stmt. ¶ 9. Plaintiff alleges that in the "no camera zone" two corrections officers "punched [his] right eye, tackled, flipped and then stomped [him] in the back of his head, punched [him] in the testicles, then pepper sprayed him." Compl. See also Plaintiff's Deposition Transcript ("Pl. Dep.") ECF No. 82-1, 24:2-25–17. Defendants claim that plaintiff was loud and boisterous, that he lunged towards an officer, and that, in the process of restraining plaintiff, plaintiff and the officer fell to the ground. Defs' 56.1 Stmt. ¶¶ 10–13; Use of Force Package ("Force Package") ECF No. 82-10, 15. Defendants further allege that when plaintiff continued to resist compliance with the officers' orders, a third officer arrived at the scene and pepper sprayed plaintiff's face. Defs' 56.1 Stmt. ¶ 14; Force Package at 15. Plaintiff disputes that he was being aggressive and contends that the officer punched him in face, unprompted. Pl. Dep. 24:2-15. Plaintiff was subsequently escorted to the medical unit. Defs' 56.1 Stmt. ¶¶ 16, 18. He was evaluated as having slight swelling to his upper cheek and photographs were taken of his injuries. Defs' 56.1 Stmt. ¶¶ 19, 21; Post Use of Force Report Dated 3/29/16, ECF No. 82-11; Photographs from Use of Force Package, ECF No. 82-12.

Later in the evening that same day, plaintiff alleges that he was secured in a cell when two officers approached his cell, began shouting "stop trying to hit me," and then "pepper sprayed plaintiff." Compl. Defendants claim that plaintiff grabbed an officer's wrist through the feeding slot in his cell when the officer attempted to give him a blanket and that when plaintiff ignored the officer's orders to release him, another officer arrived at the cell area and disbursed pepper spray to plaintiff's face. Defs' 56.1 Stmt. ¶¶ 22–26; Force Package at 7–10. Plaintiff alleges that he was "making a lot of verbal comments" but that he was "[not] making verbal threats" to the officers. Pl. Dep. 30:17-20. Plaintiff was brought back to the medical unit. Defs' 56.1 Stmt. ¶ 27; Force Package at 16–17. A

3

building sergeant requested plaintiff to be evaluated by the mental health unit and plaintiff was placed on constant observation status until April 5, 2016. Defs' 56.1 Stmt. ¶¶ 30–31; Force Package at 16.

Plaintiff's complaint alleges that in "mid July plaintiff was attacked by [an] inmate and [an] officer." Compl.[6] Defendants claim that on June 17, 2016, plaintiff attempted to punch an inmate and refused to comply with an officer's verbal commands, resulting in the officer using a "control hold to take plaintiff to the ground." Defs' 56.1 Stmt. ¶¶ 32–33; Use of Force Report ("Force Report #2"), ECF No. 82-20 at 3–7. Plaintiff alleges that on that date, after an inmate tried to attack him, an officer "threw [plaintiff] on the ground" and "knee[d]" plaintiff in the face. Pl. Dep. 58:15-24. The medical staff noted that plaintiff had some swelling under his right eye and a small abrasion on his right elbow. Defs' 56.1 Stmt. ¶ 3; Urgent Care Assessment, ECF No. 82-14. Plaintiff was charged and found guilty of attempted assault at his disciplinary hearing. Defs' 56.1 Stmt. ¶¶ 38–39; Inmate History Information.

### B. Plaintiff's Other Grievances

In addition to the excessive force claims described above, plaintiff's complaint alleges that he was placed on a "bogus" mental health watch, that "[p]eople inside [Nassau County Correctional Center] played with [his] food a lot," and that officers did not produce him for court dates. Compl. Pl. Dep. 24:2-15. Plaintiff filed twelve grievances regarding these issues, listed below by date:

- May 11, 2016 Grievance: plaintiff filed a grievance requesting kosher, vegan meals for religious reasons. Plaintiff did not sign off on the grievance and he did not file an appeal. Inmate Grievance File Information ("Grievance File"), ECF No. 82-16, at 2–7.

- June 3, 2016 Grievance: plaintiff field a grievance requesting to be removed from mental health observation. A physician reported that general housing was not advised because plaintiff had been diagnosed with bipolar disorder and was not complying with treatment. Plaintiff appealed the decision, and his appeal was denied. Plaintiff then filed an appeal with the New York State Commission of Correction Citizen's Policy and Complaint Review Council which upheld the facility's decision. Id. at 16–23.

---

[6] The supplement to plaintiff's complaint estimates the date of the alleged attack as "mid to late June." Compl. Supp.

4

- June 21, 2016 Grievance: plaintiff filed a grievance stating that he missed court appearances. The grievance was determined to be non-grievable and plaintiff was advised that his appearances had been canceled by the Court. Plaintiff signed the grievance, indicating his acceptance of the decision. Id. at 25–28.

- June 23, 2016 Grievance: plaintiff filed a grievance stating that he had received high calorie meals instead of double portion meals. The grievance was accepted, and plaintiff was informed that his double portion vegan meals were re-ordered. Id. at 35–49.

- June 26, 2016 Grievance: plaintiff submitted a grievance regarding his double portion vegan meals. He was informed that he was receiving the double portion vegan meals. Id. at 50–56.

- June 28, 2016 Grievance: plaintiff again submitted a grievance regarding his double portion vegan meals. He was informed that he was receiving the double portion vegan meals. Id. at 57–58.

- June 30, 2016 Grievance: plaintiff submitted a grievance regarding his double portion vegan meals and requesting that his food be covered in saran wrap. He was informed that he was receiving the double portion vegan meals and that the food was covered prior to distribution. Id. at 66–71.

- July 7, 2016 Grievance: plaintiff requested to be removed from mental health observation. His request was again denied. Plaintiff then filed an appeal with the New York State Commission of Correction Citizen's Policy and Complaint Review Council which upheld the facility's decision. Id. at 72–83.

- July 12, 2016 Grievance: plaintiff filed a grievance reporting a black substance in his food. The grievance was accepted, and the meal was replaced. Id. at 84–90.

- July 13, 2016 Grievance: plaintiff filed a grievance regarding his food and missing court dates. The grievance was accepted, and plaintiff was advised that his court appearance had been canceled and that his food was being closely monitored. Plaintiff signed the grievance acknowledging the decision. Id. at 91–99.

- July 14, 2016 Grievance: plaintiff requested to be removed from mental health observation. His request was again denied. Id. at 100–11.

- July 29, 2016 Grievance: plaintiff filed a grievance claiming that he was not receiving adequate nutrition. The grievance was accepted, and a facility physician prescribed double portion vegan meals. Id. at 110–20.

5

# PROCEDURAL HISTORY

Plaintiff filed the instant complaint on May 7, 2018. ECF No. 1. The Court granted plaintiff's motion to proceed *in forma pauperis*, ECF No. 2, and directed the United States Marshals Service to serve defendants, ECF No. 4. Defendants answered the complaint, ECF No. 28, and the Court held the initial conference. Plaintiff's motion to compel, ECF No. 33, was denied and the Court set the discovery schedule. ECF No. 42.

On June 17, 2019, this case was reassigned to me. The Court held a status conference and denied plaintiff's motions for extensions of time, ECF Nos. 46, 49, plaintiff's motion to compel, ECF No. 52, and plaintiff's motion to produce, ECF No. 54, as moot. ECF No. 57. Discovery closed on February 28, 2020,[7] see ECF No. 60, and defendants requested a pre-motion conference to move for summary judgment. ECF No. 65. Judge Brown referred the pre-motion letter request and defendants' motion for summary judgment, ECF No. 82, to me for a Report and Recommendation. Aug. 27, 2020 Order. After the pre-motion conference, plaintiff moved to amend his complaint. ECF No. 70. Defendants requested a stay of the summary judgment briefing schedule in light of plaintiff's motion to amend. ECF No. 73. The Court granted in part and denied in part defendants' request. The briefing schedule was modified to incorporate briefing on plaintiff's motion to amend his complaint. ECF No. 74. On January 27, 2021, both motions were fully briefed. ECF Nos. 82–84.

## I. Standard of Review

"Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is entitled to

---

[7] Defendants requested, and the Court had granted, an extension of the discovery deadline. ECF No. 62. After the close of discovery, plaintiff moved to compel discovery, stating that defendants "did not submit proper sufficient responses" to his interrogatories. ECF No. 76. The Court denied plaintiff's motion. ECF No. 78.

6

judgment as a matter of law.'" Doninger v. Niehoff, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also, Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

If the moving party meets its burden in establishing the absence of any genuine issue of material fact, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." Salahuddin v. Goord, 467 F.3d 263, 273 (2d Cir. 2006). The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252).

Here, because plaintiff is proceeding *pro se*, the Court "reads [his] papers liberally and interpret[s] them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)) (internal quotations omitted). This is especially important in the summary judgment context when a *pro se*

plaintiff's claims are subject to dismissal. See Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) ("Special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment.").

Factual disputes regarding a prisoner's failure to exhaust administrative remedies under the Prison Litigation Reform Act ("PLRA"), however, do not entitle the inmate to a jury trial. See Heyliger v. Gebler, 624 Fed. Appx. 780, 783 (2d Cir. 2015) (summary order) (affirming summary judgment for defendants, stating that plaintiff "was not entitled to trial on the issue of exhaustion");[8] Messa v. Goord, 652 F.3d 305, 310 (2d Cir. 2011) (per curiam) ("the Seventh Amendment does not guarantee a jury trial on factual disputes regarding administrative exhaustion under the PLRA"). "Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact." Abdur-Rahman v. Terrell, No. 10-CV-3092, 2012 WL 4472119, at *5 (E.D.N.Y. Sept. 25, 2012).

**II. The Prison Litigation Reform Act ("PLRA") Exhaustion Requirement**

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong[.]" See Porter v. Nussle, 534 U.S. 516, 532 (2002). The exhaustion requirement is mandatory and "a court may not excuse a failure to exhaust, even to take [special] circumstances into account." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); see also Jones v. Bock, 549 U.S. 199, 211

---

[8] The Clerk of Court shall send plaintiff copies of the attached unreported cases cited herein.

(2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

To properly exhaust all remedies, the PRLA mandates that an inmate must use "all steps that the agency holds out, and [do] so *properly* (so that the agency addresses the issues on the merits).'" Jones v. Sposato, No. 16-CV-5121, 2017 WL 4023135, at *4 (E.D.N.Y. Aug. 22, 2017) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)) (emphasis in original), Report and Recommendation adopted, 2017 WL 4023345 (E.D.N.Y. Sept. 11, 2017); see also Macias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007) ("Regardless of whether [complaints through other channels] put the prison officials on notice of his grievance 'in a substantive sense,' […] to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies"); Harrison v. Goord, No. 07 Civ. 1806, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) (inmates are required to exhaust their administrative remedies even if they believe that administrative remedies would be "ineffective or futile") (internal citations omitted); Schwartz v. Dennison, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007) ) ("A prisoner must completely exhaust the administrative remedies to the highest level for each claim he seeks to present. Moreover, a claim must be completely exhausted prior to commencing suit."), aff'd, 339 Fed. Appx. 28 (2d Cir. July 22, 2009) (summary order).

The administrative review process is thus defined "not by the PLRA, but by the prison grievance process" and the Court's exhaustion inquiry requires review of "the [county] prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." Jones, 2017 WL 4023135, at *4 (internal citations and quotation marks omitted). "[F]ailure to exhaust is an affirmative defense under the PLRA that must be raised and proven by defendants." Villafane v. Sposato, No. 16-CV-3674, 2017 WL 4179855, at *10 (E.D.N.Y. Aug. 22,

9

2017) (citation and internal quotation marks omitted), Report and Recommendation adopted, 2017 2017 WL 4157220 (E.D.N.Y. Sept. 15, 2017).[9]

Whether administrative remedies have been exhausted does not end the Court's inquiry because "the PLRA contains its own textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858. An inmate "must exhaust available remedies, but need not exhaust unavailable ones." Id. The Supreme Court has identified three kinds of circumstances in which an administrative remedy is unavailable:

> First, an administrative remedy may be unavailable when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates.' Second, 'an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.' In other words, 'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.' Third, an administrative remedy may be unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'

Williams v. Correction Officer Priatno, 829 F.3d 118, 123–24 (2d Cir. 2016) (quoting Ross, 136 S. Ct. at 1859–60). It is plaintiff's burden to prove that a grievance procedure is unavailable. Hubbs v. Suffolk Cty Sheriff's Dep't., 788 F.3d 54, 59 (2d Cir. 2015).

Nassau County Correctional Center's Inmate Handbook details the Facility's Grievance Procedure. See ECF No. 82-15, at 4–5 ("Inmate Handbook"). The Grievance Procedure dictates that an inmate must fill out a grievance form within five (5) days of the act or occurrence leading to the grievance and within five (5) business days of receipt of a grievance, the Grievance Coordinator will issue a written finding. Id. at 4. If the inmate does not agree with the decision, the Inmate Handbook details the process for the inmate to appeal, first to the Chief Administrative Officer, then to the New York State Commission of Correction's Citizens Policy and Complaint Review Council. Id. at 4–5.

---

[9] Defendants' answer raised failure to exhaust under the PLRA as an affirmative defense. ECF No. 28 at ¶¶ 18–19.

The Inmate Handbook also explicitly states that an inmate may file a grievance if the inmate believes that corrections staff have used excessive force. Id. at 2.

Here, plaintiff alleges that he "filed a report with internal affairs connected to the attacks on the 29th" and that "[i]n mid to late June 2016 [he] met with the internal affairs connected to [the June 17, 2016] attack." ECF No. 18. However, he did not file a grievance within five days of the three incidents in his complaint alleging excessive force. See Grievance File (there is no record of a grievance filed by plaintiff for any incident on March 29, 2016 or June 17, 2019);[10] Defs' Mem. at 12. Plaintiff does not claim that he filed a grievance regarding any of the three excessive force incidents he raises here. Further, plaintiff makes no argument that his failure to exhaust should be excused on any of the grounds outlined in Ross. Indeed, plaintiff was quite familiar with the Grievance Procedure at Nassau County Correctional Center; he filed twelve other grievances regarding his claims in this action. See Grievance File; Defs' 56.1 Stmt. ¶ 42. As such, plaintiff cannot demonstrate that the Grievance Procedure was "unavailable" to him.

Accordingly, there is no issue of material fact and plaintiff did not exhaust his administrative remedies as required under the PLRA regarding his excessive force claims at issue in this case. Therefore, I respectfully recommend that defendants' motion for summary judgment should be granted on plaintiff's excessive force claims.

**III. Plaintiff's Other Constitutional Claims**

Pursuant to 42 U.S.C. § 1983:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United

---

[10] In the future, defendants' counsel shall file a sworn statement attesting to such facts rather than filing voluminous records for the Court to comb through to verify the absence of a grievance. Counsel's submission was not an efficient use of resources.

11

> States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ..

To prevail on a claim under § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." Hawkins v. Nassau Cty. Corr. Facility, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983).

### A. Personal Involvement

Defendants argue that any claims against Former Sheriffs Michael Sposato and Vera Fludd[11] should be dismissed because plaintiff fails to allege that these defendants were personally involved in the alleged violations of his constitutional rights. It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks and citation omitted). "An individual cannot be held liable for damages under § 1983 merely because he held a high position of authority[.]" Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)). A supervisor can be found liable for a constitutional violation under the following circumstances:

> (1) direct participation in the alleged violation, (2) failure to remedy the violation after being informed of it, (3) creation or tolerance of a policy or custom under which the violation occurred, (4) gross negligence in supervising subordinates who committed the violation, or (5) failure to act on information indicating that the violation was occurring.

Davis v. Cty. of Nassau, 355 F. Supp. 2d 668, 676 (E.D.N.Y. 2005) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). A plaintiff must "allege particular facts indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald

---

[11] Michael Sposato was the Sheriff of Nassau County Correctional Center during plaintiff's incarceration. Vera Fludd was the Sheriff of Nassau County Correctional from January 2018 through January 2020, after plaintiff's incarceration at Nassau County Correctional Center.

12

assertions and conclusions of law' do not suffice." Id. at 677 (quoting Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996)).

Here, plaintiff produced no evidence that Sposato or Fludd were personally involved in the incidents he alleges or that the circumstances here could support supervisory liability. Plaintiff's complaint and supplement to his complaint make no mention of Sposato or Fludd beyond the caption. Instead, his memorandum attempts to allege supervisory liability. See Pl.'s Mem. However, there is no *respondeat superior* or vicarious liability under § 1983. Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).[12]

## B. Constitutional Rights

Defendants further argue that plaintiff has not demonstrated a plausible claim that his constitutional rights were violated. Section 1983 itself does not create substantive rights, but rather, it provides "a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). Plaintiff's supplement to his complaint states that he is asserting claims for violations of his First Amendment, Eighth Amendment, Fifth Amendment, and Fourteenth Amendment rights.[13] Compl. Suppl.

---

[12] Although not alleged in his complaint, Plaintiff's Memorandum in Opposition to defendants' motion for summary judgment suggests a Monell claim against the County. In order to state a § 1983 claim against a municipality, a plaintiff must establish a municipal policy, custom or practice gave rise to the constitutional violation alleged. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690–91 (1978). As is discussed below, plaintiff does not establish a constitutional violation and so the Court need not address this argument. However, the Court briefly notes that isolated incidents cannot form the basis for municipal liability and plaintiff fails to demonstrate any link between his alleged violations and any policy at Nassau County Correctional Center. See City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985).

[13] The Due Process Clause of the Fifth Amendment only applies to the actions of federal, not state actors. Nassau County is a municipality and so the Fifth Amendment is inapplicable here. Insofar as plaintiff asserts an Eighth Amendment violation for his failure to protect and use of excessive force claims, the Court does not consider these claims as plaintiff failed to exhaust these claims under the PLRA, as discussed in Section II of this Report.

13

1. **Plaintiff's Food Claims**

The instant record does not make clear whether plaintiff was an inmate or a detainee during his incarceration at Nassau County Correctional Center and so the Court addresses his conditions of confinement claim under both the Eighth and Fourteenth Amendments.[14] Under the Eighth Amendment, prison officials "must provide humane conditions of confinement" for inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994). "A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment." Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017) citing Benjamin v. Fraser, 343 F.3d 35, 49 (2d Cir. 2003); see also Iqbal v. Hasty, 490 F.3d 143, 168 (2d Cir. 2007) ("[p]retrial detainees have not been convicted of a crime and thus 'may not be punished in any manner—neither cruelly and unusually nor otherwise.'") (quoting Benjamin, 343 F.3d at 49–50); City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (the due process rights of a detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner.").

The Eighth Amendment requires that prison officials "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer, 511 U.S. at 837; see Willey v. Kirkpatrick, 801 F.3d 51, 69 (2d. Cir. 2015) ("[the] Eighth Amendment requires 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it.'") quoting Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam). The Fourteenth Amendment also protects a detainee's right to adequate food.

---

[14] Defendants state "[p]laintiff was an inmate at the Nassau County Correctional Center between March 29, 2016 and August 1, 2016… Plaintiff's incarceration was ordered after he had been *charged* with … Plaintiff *ultimately* received a six-month sentence…and served his sentence at Nassau County Correctional Center." Supp. Mem. at 2 (emphasis added). Defendants' exhibit Inmate History Information, ECF No. 82-9, includes a Sheriff's Department Securing Order that is undated. Based on these documents, it is not clear to the Court when plaintiff was sentenced. Defendants' counsel shall take care to be clearer about these facts in their future briefings to the Court.

Warren v. City of New York, No. 18-CV-04410, 2020 WL 353772, at *3 (S.D.N.Y. Jan. 21, 2020) ("Pre-[trial] detainees and prisoners are entitled to 'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to [their] health and wellbeing…'") (quoting Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983)).

To set forth a § 1983 claim for conditions of confinement, a plaintiff must show that the challenged condition is objectively serious and that the defendant "acted with deliberate indifference to the challenged conditions." Wilson v. Seiter, 501 U.S. 294, 303 (1991); Smith v. Carpenter, 316 F.3d 178, 183–84 (2d Cir. 2003). Under the Eighth Amendment, this standard includes an objective and subjective prong. Farmer, 511 U.S. at 834 (objectively, the deprivation was sufficiently serious, and subjectively, defendants acted with deliberate indifference). While the objective prong is analyzed by the Court the same way under the Eighth or Fourteenth Amendment, Darnell, 849 F.3d at 29, the Supreme Court has held that, when analyzed under the Fourteenth Amendment, the second prong, deliberate indifference, is defined objectively. Kingsley v. Hendrickson, 576 U.S. 389, 402 (2015).

Plaintiff's allegations that someone was tampering with his food are vague and conclusory.[15] There is no evidence that anyone was tampering with plaintiff's food or that plaintiff faced an excessive risk to his health or safety. Plaintiff does not connect either defendant to the alleged food tampering. Accordingly, there is no evidence to suggest that plaintiff's Eighth or Fourteenth Amendment rights were violated and defendants' motion for summary judgment should be granted on this claim.

---

[15] When asked at his deposition, plaintiff testified he was not sure how his food was tampered with. Pl. Dep. 37:5-11, 39:23-25.

### 2. Plaintiff's Mental Health Observation Claim

The liberty interests of inmates and detainees alike derive from the Due Process Clause. See Arce v. Walker, 139 F.3d 329, 333 (2d Cir. 1998); Bell v. Wolfish, 441 U.S. 520, 545 (1979). To establish a § 1983 due process claim, a plaintiff must show that (1) he possessed a protected liberty interest and (2) the County deprived him of that interest as a result of insufficient process. See e.g., Arce, 139 F.3d at 333 (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). The Court construes plaintiff's claim that he was "placed on a bogus suicide precaution…that lasted eight days" as a due process claim. Houston v. Cotter, 7 F. Supp. 3d 283, 294 (E.D.N.Y. 2014) (discussing how an inmate's improper placement on suicide watch can present a cognizable due process claim). Being placed on suicide watch, by itself, however, does not violate a protected interest. Id. at 297; see Sandin v. Conner, 515 U.S. 472, 484 (1995) (to give rise to the protections of the Due Process Clause, a challenged restraint must "exceed[] the sentence in … an unexpected manner."). In the absence of any supporting factual allegations suggesting that the actions of the prison staff were improper "[the Court] is hesitant to second-guess the actions of prison mental health officials." Acevedo v. Fischer, 12-CV-6866, 2014 WL 5015470 (S.D.N.Y. Sept. 29, 2014) (the 30 days plaintiff spent in observation and under suicide watch were insufficient to give rise to a due process claim); see also Bell, 441 U.S. 520 at 548 n.29 (finding that the Supreme Court's precedent regarding restrictions on convicted inmates and pretrial detainees reflects that "courts should defer to the informed discretion of prison administrators because the realities of running a corrections institution are complex and difficult, courts are ill equipped to deal with these problems, and the management of these facilities is confided to the Executive and Legislative Branches, not to the Judicial Branch.").

Here, plaintiff fails to demonstrate that the actions of medical staff were medically inappropriate or motivated by an improper purpose. Further, plaintiff does not set forth evidence that he was afforded insufficient process. Plaintiff simply states that he disagrees with the physician's

16

diagnosis and decision to place him under observation.[16] Further, the watch was of a relatively short duration and did not exceed his sentence in an unexpected manner. Accordingly, defendants' motions for summary judgment should be granted on this claim.

### 3. Plaintiff's Access to the Court Claim

Incarcerated individuals have a right to meaningful access to the courts. See Lewis v. Casey, 518 U.S. 343, 35 (1996) (describing the right as "well-established"). Reading plaintiff's complaint liberally, plaintiff claims that his First Amendment rights were violated when Nassau County Correctional Center failed to produce him for Court appearances. "In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury . . . i.e., took or was responsible for actions that hindered a plaintiff's effort to pursue a legal claim." Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997) (internal quotation marks and citations omitted). Plaintiff filed two grievances regarding his missed court appearances. An investigation into those two grievances determined that his court date had been adjourned or cancelled on those two dates. Plaintiff signed the grievances acknowledging his acceptance of the grievance decision. There is no evidence to suggest that defendants caused plaintiff any injury. Therefore, the record fails to support plaintiff's First Amendment claim. The Court should grant defendants' motion for summary judgment on this claim.

## IV. Plaintiff's Motion to Amend the Complaint

Under Rule 15(a) of the Federal Rules of Civil Procedure, a plaintiff may amend a complaint after an answer has been filed only with leave of Court or consent of the opposing party; however, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). A motion

---

[16] The Court also notes that the mental health evaluation was performed by Armor Correctional Health Services, Inc., not the County.

17

for leave to amend should be denied only for good reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 144 (2d Cir. 2020) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

An amendment would be futile if the proposed claim would fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir. 2012); Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002). On a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the Court need not grant a motion to amend the complaint where the claim would "immediately be subject to dismissal on a motion for summary judgment." Stoner v. N.Y. City Ballet Co., 2002 WL 523270 at *4 (S.D.N.Y. Apr. 8, 2002). "[I]t is ultimately within the sound discretion of the court whether to grant leave to amend." MHANY Mgmt. v. Cty. of Nassau, 843 F. Supp. 2d 287, 340 (E.D.N.Y. 2012).

Here, plaintiff moves to amend his complaint to add seven defendants he alleges were involved in the excessive force incidents on March 29, 2016 and June 17, 2016. ECF No. 70. Defendants oppose the motion on the ground that it is time-barred by the three-year statute of limitations applicable to § 1983 claims. ECF No. 71. Further, defendants argue that plaintiff's claims do not relate back to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1)(C). Id.; Mem. at 20. The Court need not reach this argument. Even if the Court were to find that the amendment relates back to the timely filed complaint, the newly amended complaint would still be dismissed for plaintiff's failure to exhaust his administrative remedies.

Granting leave to amend is futile if "the newly amended pleading would be subject to dismissal for the failure to exhaust administrative remedies." Feliciano v. Anderson, No. 15-CV-4106, 2017 WL 1189747, at *6 (S.D.N.Y. Mar. 30, 2017). See, e.g., Baez v. Kahanowicz, 469 F. Supp. 2d 171, 180 (S.D.N.Y. 2007) ("Because . . . any subsequently amended . . . complaint is subject to dismissal for failure to exhaust administrative remedies, it would be futile to grant plaintiff leave to amend . . ."), aff'd, 278 F. App'x 27 (2d Cir. 2008) (summary order); Cotto v. Vitale, No. 20 Civ 3011, 2021 U.S. Dist. LEXIS 20028, at *25 (S.D.N.Y. Feb. 1, 2021) ("it would be futile for Plaintiff to amend, as, […] he has not exhausted any of his claims, and thus all of those claims […] would immediately be subject to dismissal"), Report and Recommendation adopted by 2021 U.S. Dist. LEXIS 36607 (S.D.N.Y. Feb. 26, 2021); Fox v. Sheftic, No. 19-CV-498, 2020 WL 7753543, at *24 (N.D.N.Y. Nov. 24, 2020) ("a motion to amend in this action will likely be futile because plaintiff has failed to exhaust his administrative remedies […]. It would not matter who was named as defendant […] plaintiff's claims would nonetheless be dismissed"), Report and Recommendation adopted by 2020 WL 7714607 (N.D.N.Y. Dec. 29, 2020); Alvarez v. United States, 98 Civ. 3179 2000 WL 557328, at *2 (S.D.N.Y. May 3, 2000) (granting defendant's motion for reconsideration of the Court's summary judgment motion and denying plaintiff's motion to amend as futile since he had failed to exhaust his administrative remedies); cf. Schiff v. Suffolk Cty. Police Dep't, No. 12-CV-1410, 2015 WL 1774704, at *10 (E.D.N.Y. Apr. 20, 2015) (the Court disagreed with defendants that plaintiff's failure to exhaust rendered her motion to amend futile, though stated that defendants could re-raise the argument at the summary judgment stage, when the record was developed).

Here, naming seven new defendants would not cure plaintiff's failure to exhaust his administrative remedies under the PLRA for the alleged excessive force incidents on those two dates. Moreover, despite the opportunity to do so, plaintiff failed to raise any basis to excuse his failure to

19

exhaust in opposition to defendants' motion for summary judgment. Accordingly, it is recommended that plaintiff's motion to amend his complaint should be denied as the amendment would be futile.

## CONCLUSION

For the reasons set forth herein, it is respectfully recommended that defendants' motion for summary judgment should be granted and plaintiff's motion to amend should be denied. Plaintiff's complaint should be dismissed.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 24, 2021
       Brooklyn, New York